IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GORDON D.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

Case No. 6:20-cv-01207-CL

**OPINION AND ORDER**

**CLARKE, U.S. Magistrate Judge.**

Gordon D. ("Plaintiff") brings this appeal challenging the Acting Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff filed his application for DIB on May 25, 2017, alleging disability as of January 27, 2017, due to barsal arthritis in both thumbs, degenerative arthritis in the spine, two neck fusions (with intent for a third neck fusion), and an artificial hip on the right side. (Tr. 78, 170, 188.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 77-87, 88-99.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 25, 2019. (Tr. 33-76.) Following the administrative hearing, ALJ

PAGE 2 – OPINION AND ORDER

Steven De Monbreum issued a written decision dated June 4, 2019, denying Plaintiff's application. (Tr. 17-32.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that decision.

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

PAGE 3 – OPINION AND ORDER

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 22-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 27, 2017. (Tr. 22.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease, osteoarthritis, carpal tunnel syndrome (status post release surgery), and headaches (20 CFR 404.1520(c))." (Tr. 22.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 23.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b)" subject to these limitations:

> [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. He is limited to occasional crouching, stooping and bending, but can never crawl. The claimant can frequently handle, finger and push/pull, with both the left and right upper extremities. The claimant can have no exposure whatsoever to vibrations or to workplace hazards such as unprotected heights and dangerous machinery.

(Tr. 23.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work. (Tr. 27.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a storage facility clerk, assembler electronics accessories, and basket filler. (Tr. 28.) Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act and denied his application for disability benefits. (Tr. 28.)

### DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide clear, and convincing reasons for discounting Plaintiff's symptom testimony; (2) failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's wife, Sheila

PAGE 4 – OPINION AND ORDER

D.; and (3) failing to include all of Plaintiff's limitations in the RFC and hypothetical questions. (Pl.'s Opening Br. at 13, 19, 22.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of benefits.

I.     PLAINTIFF'S SYMPTOM TESTIMONY

A.     Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B.     Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 24, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

**1.     Daily Activities**

The ALJ discounted Plaintiff's symptom testimony based on his daily activities. (*See* Tr. 26.) An ALJ may discount a plaintiff's testimony based on activities that are incompatible with the plaintiff's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount his testimony based on his reported activities. (*See* Pl.'s Opening Br. at 16, arguing "the ALJ does not link this statement to his rejection of any aspect of [Plaintiff's] testimony.") The Court disagrees.

PAGE 6 – OPINION AND ORDER

The ALJ cites to the Plaintiff's hobby of fishing to show a contradiction with Plaintiff's subjective symptom testimony regarding the severity of his symptoms. The ALJ explicitly links the activity of fishing to Plaintiff's testimony on his "problems handling and fingering" as compared with his ability to fish and bait a hook with night crawlers. (Tr. 26.) The ALJ's use of Plaintiff's daily activities was supported by substantial evidence in the record. (*see* Tr. 62-64 (Plaintiff describes "croppy fishing for the last couple of years," where Plaintiff does not use artificial lures, but instead is able to bait his own line using night crawlers, and that Plaintiff can not fish as long as he used to and "[t]hat's gotten gradually worse over the last couple of years." Plaintiff testified he "used to be able to fish a full day. I go out now and, because of the hands primarily and the back, not being able to stand in one position, my fishing trips are down to a couple of hours," however he also testified he is able to fish once or twice a month, but had to cancel "a lot of trips in the last couple of years."); Tr. 81 (Plaintiff "self-reports the ability to drive and shop regularly, as well as go fishing on an almost daily basis."); Tr. 269 (Medical records from August 2016, indicate Plaintiff's activities are biking and fishing.); Tr. 354, 356 (Medical records from July 2018, and October 2018, indicate Plaintiff recreates by fishing.).) In the Court's view, Plaintiff's interpretation of the record is rational, but the ALJ's interpretation of the record is also rational and, therefore, must be affirmed.

### 2. Contradictory Medical Evidence

The ALJ also discounted Plaintiff's symptom testimony based on conflicting medical evidence. The ALJ cites Plaintiff's testimony, from a function report, where Plaintiff stated his ability to work is limited by his history of spinal injuries and degenerative disc disease and that the arthritis in his hands limits his ability to grip objects. (Tr. 24 (citing 200-07).) The ALJ also notes Plaintiff's hearing testimony where Plaintiff testified:

PAGE 7 – OPINION AND ORDER

his back pain limits his ability to be on his feet for more than 1 hour. His wrist and thumb impairments limit his ability to use hand tools. He estimates that he has 20-25% strength left in his hands. He experiences pain when sitting and is only able to sit for 25-30 minutes before he has to stand. He is able to stand for 30-45 minutes before he needs to sit or lie down. He is unable to use an assistive device because of his hand/wrist impairment. The claimant suffers from headaches that he relates to his cervical spine. He is unable to sleep at night because of his back pain and finds himself exhausted during the day.

(Tr. 24.)

With respect to Plaintiff's hand and wrist impairment, the ALJ cites to a June 2017 report, where Plaintiff reported "feeling much improved following CTS release surgery" with some continued pain from the arthritis in his thumbs. (Tr. 25 (citing Tr. 301).) The ALJ further cites to treatment records from October 2017, April 2018, and October 2018 that show Plaintiff received significant symptom relief of his CMC joint arthritis with steroid injections. (Tr. 25 (citing Tr. 337-53).) The ALJ asserts the limitations contained in Plaintiff's RFC adequately address the limitations supported by the medical evidence. (*See* Tr. 25.)

With respect to Plaintiff's spine impairments, the ALJ cites treatment notes from September 2017 that indicated Plaintiff's low back and neck pain were stable on chronic narcotic therapy. (Tr. 25 (citing Tr. 326).) The ALJ also cites an MRI of the Plaintiff's lumbar spine, obtained in April 2018, that showed mild to severe degenerative changes at multiple levels, with the worst at L2-L3. (Tr. 25 (citing Tr. 376).) The ALJ notes, a disc bulge was observed at this level as well as prominent neural foramen narrowing. (Tr. 25 (citing Tr. 376).) The ALJ further notes:

> An EMG study performed in June 2018 showed no evidence of right or left lumbosacral radiculopathy and no evidence of a myopathic process or peripheral neuropathy.
>
> Imaging of the claimant's lumbar spine, obtained in August 2018, showed anatomic sagittal alignment on both flexion and extension views. No suspicious compression

> deformities of destructive bone lesions were reported. Mild left L5-S1 facet arthrosis was seen.
>
> Imaging of the claimant's cervical spine, obtained in August 2018, showed multilevel discectomy and fusion with good alignment and no evidence of instability. Severe right C2-C3 facet arthrosis was seen.
>
> In October 2018, the claimant reported increased pain in his neck and low back. His provider noted severe C2-C3 facet uptake. The claimant's care plan included bilateral C2-C3 facet joint blocks. It was indicated that these injections would not be covered by his insurance, with his provider noting "we don't really have much else to offer him[."]
>
> In January 2019, the claimant reported increased neck pain. His Percocet prescription was refilled and he was referred back to orthopedics. Records show that the claimant received bilateral cervical facet joint block injections in April 2019.

(Tr. 25-26 (citing Tr. 351, 334-36, 355, 375, 378) (internal citations omitted).)

In weighing the medical evidence, the ALJ asserts that the RFC limits Plaintiff to performing light exertional work consistent with the objective medical evidence. The ALJ also notes Plaintiff's degenerative disc disease and headaches additionally support postural limitations in the areas of climbing, crouching, crawling and stooping as well as working around vibrations and hazards.

The ALJ acknowledges that evidence supports Plaintiff's allegations of hand/wrist, neck, and back pain, but Plaintiff's medical record does not support limitations beyond those incorporated into Plaintiff's RFC. (*See* Tr. 25-26.) The ALJ also notes that Plaintiff has stopped taking Percocet for his pain and appears to have no difficulty being "alert and oriented to time, place, and person" despite his testimony that his chronic pain limits his ability to focus. (Tr. 26 (citing Tr. 339, 343, 347, 350).)

It is appropriate for an ALJ to discount a claimant's symptom testimony based on contradictory medical evidence. *See, e.g., Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir.

PAGE 9 – OPINION AND ORDER

2019) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that the ALJ appropriately discounted the claimant's testimony based on, among other reasons, the presence of "contradictory medical evidence" in the record). Plaintiff argues the ALJ did not provide specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony. (Pl.'s Opening Br. at 13.) In the Court's view, Plaintiff's interpretation of the record is rational, but the ALJ's interpretation of the record is also rational and, therefore, must be affirmed. Accordingly, the ALJ limited the Plaintiff to less than the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 23.) These limitations adequately account for the Plaintiff's medically determinable impairments. Given the evidence described above, the Court concludes that it was reasonable for the ALJ to discount Plaintiff's physical symptom testimony on the ground that it conflicted with the medical evidence. (*See* Tr. 337 (In August 2018, Plaintiff had right STT joint injection that provided "moderate relief of his symptoms for 2 months. However, his symptoms have gradually returned and his thumb base is now painful. He describes this pain as a deep, throbbing ache and rates it a 4/10." In April 2018, Plaintiff had left CMC joint injection that "provided significant relief of his symptoms for 5 months. However, his symptoms have gradually returned and his left thumb base is now painful. He describes this pain as a deep, throbbing ache and rates it a 7/10." Rest helps with both joint issues.); 339 (A bilateral upper extremity examination revealed his right STT joint and radioscaphoid joint are tender to palpation and his first CMG is nontender to palpation on the right. The examination also revealed his wrist extension is 45/45 and flexion is 45/90 with pain at terminal motion. He has full forearm rotation and his radial deviation is 5/20 and ulnar deviation is 30/40. He is tender to palpation over the left first CMG joint. He is also intact to light touch and motor in the median/ulnar/radial nerve distribution. "Capillary refill is less than 2 seconds and the fingers are

PAGE 10 – OPINION AND ORDER

warm."); 339 (Plaintiff had around five months of relief from his previous left first CMG injection and requested an additional injection in October 2018. The injection was determined to be a "reasonable request and treatment plan." It was noted that Plaintiff had "no skin changes or blanching." At the October 2018 appointment, Plaintiff was provided another injection and he tolerated this procedure well. The Plaintiff was advised to "monitor his symptoms and modify his activity as tolerated. He will follow up as needed if/when his symptoms persist or worsen."); 341 (In April 2018, Plaintiff had a CMC joint injection that "provided significant relief of his symptoms for 4 months."); 345 (In October 2017, Plaintiff had CMC joint injection and stated the injection "provided significant relief of his symptoms for 4-5 months. However, his symptoms have gradually returned and his thumb base is now painful. He describes this pain as a deep, throbbing ache and rates it a 6/10.").

### 3. Conclusion

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

/ / / / /

/ / / / /

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

### B.    Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's wife, Sheila D. (*See* Pl.'s Opening Br. at 19.) As explained below, the Court disagrees.

The ALJ addressed Sheila D.'s thirty-party function report on page twenty-six of his decision citing the lay witness testimony that states the Plaintiff's "impairments limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use hands." (Tr. 26.). The ALJ asserts the statements by Shelia D. were considered in formulating the RFC

PAGE 12 – OPINION AND ORDER

and "the RFC is generally consistent with [Sheila D.'s] statement, containing physical limitations in the areas identified." (Tr. 26.)

As explained and demonstrated above, substantial evidence supports the ALJ's discounting of Plaintiff's subjective symptom testimony regarding his physical impairments. Plaintiff has therefore failed to demonstrate that the ALJ erred in discounting Sheila D.'s testimony. However, even if the ALJ erred in discounting Sheila D.'s testimony, any error was harmless because Sheila D.'s testimony was substantially similar to Plaintiff's testimony, which the ALJ appropriately discounted. *See Blacksher v. Berryhill*, 762 F. App'x 372, 377 (9th Cir. 2019) ("Ms. Blacksher's testimony was substantially similar to that of her son. Because the ALJ provided clear and convincing reasons for discounting Blacksher's statements, 'it follows that the ALJ also gave germane reasons for rejecting' Ms. Blacksher's similar testimony, and so any error was harmless.").

## III. PLAINTIFF'S RFC

The ALJ determined Plaintiff has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 23.) Plaintiff argues the ALJ's RFC fails to include all limitations that were supported by the record. (Pl.'s Opening Br. at 22.) The Commissioner responds that the ALJ's RFC findings are supported by substantial evidence in the record. (Def.'s Br. at 9.)

### A. Applicable Law

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the

PAGE 13 – OPINION AND ORDER

medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

"Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Leroy M. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) (quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016) and citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

**B.     Analysis**

Plaintiff argues the ALJ "must take 'the claimant's subjective experiences of pain' into account when determining the RFC" and the "ALJ's RFC findings and vocational hypotheticals failed to include limitations established by [Plaintiff's] improperly rejected testimony and the improperly rejected lay witness testimony." (Pl.'s Opening Br. at 22.) The Court disagrees.

In formulating Plaintiff's RFC, the ALJ is responsible for translating his impairments into concrete functional limitations by evaluating all relevant medical and other evidence and resolving any conflicts in the record. Only limitations supported by substantial evidence must be incorporated into the RFC.

The ALJ weighed the evidence and translated into the RFC all of Plaintiff's limitations that were supported by substantial evidence and posed hypothetical questions to the VE consistent with that RFC. Accordingly, the Court concludes the ALJ did not err in formulating Plaintiff's RFC that accounted for all of Plaintiff's credible limitations, nor in posing hypothetical questions to the VE. *See Sam B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00354-DWC, 2019 WL 5541347, at *4 (W.D. Wash. Oct. 28, 2019) ("[T]he RFC assessment and the hypothetical questions posed to the VE were properly based on the credible functional

PAGE 14 – OPINION AND ORDER

limitations contained in the record, and thus both the RFC assessment and the hypothetical question posed to the VE were proper."); *Diane M. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01971-BR, 2018 WL 6440889, at *8 (D. Or. Dec. 6, 2018) ("[T]he Court concludes the ALJ did not err when he assessed Plaintiff's RFC and he accounted for all credible limitations in his assessment."). Thus, the ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this __28__ day of January, 2022.

                                          HON. MARK D. CLARKE
                                          United States Magistrate Judge